**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Ft. Lauderdale Division**
**www.flsb.uscourts.gov**

In re:                                                          CASE NO.:  19-10655-JKO

CONSUMER ADVOCACY CENTER, INC.            CHAPTER 7

     Debtor.

_____/

**DEBTOR CONSUMER ADVOCACY CENTER, INC.'S AND ALBERT KIM'S**
**REPLY MEMORANDUM IN SUPPORT OF PRECAUTIONARY JOINT MOTION**
**FOR ENLARGEMENT OF TIME TO COMPLY WITH TURNOVER**

Chapter 7 Debtor, Consumer Advocacy Center, Inc. (the "Debtor"), and Albert Kim, by

their undersigned counsel, file this Reply Memorandum to the Trustee's Response [ECF 130] to

their Precautionary Motion for Enlargement of Time [ECF 98] and state the following:

1.     The Trustee's Response presents a one-sided and unfair picture of the Debtor's

and Mr. Kim's compliance with the Court's Turnover Order [ECF 88].

2.     The area in which there has been a delay is the providing of the CRM data

relevant to the Debtor's former operations.  The CRM data the Trustee seeks was transferred, in

March 2018, to SL Account Management, Inc. d/b/a True Count Staffing ("TCS").  As discussed

below, the Debtor and Mr. Kim have used their best efforts to obtain and deliver the CRM data,

and they have made substantial progress.  To the best of their ability, they have complied with all

other requests.

**PRODUCTION OF CRM INFORMATION**

3.     The Debtor ceased operations on or about September 21, 2018, several months

before the Petition Date.  In March 2018, the Debtor transferred its processing, customer service

and billing business to TCS.  At or about that time, the Debtor transferred its CRM data with

DebtPay, Inc. d/b/a DebtPayPro ("DPP") to TCS.  Thereafter, DPP began invoicing TCS for its

services and stopped invoicing the Debtor.

4.       However, because the Debtor continued to function as a sales agency for TCS, the

Debtor needed access to TCS's DPP account in order to enter information and upload

documents.  The DPP account is an on-line CRM platform that was the primary means of

recording customer transactions and communications with customers and storing documents.

DPP stores uploaded documents on the cloud-storage service offered by Amazon Web Services

("AWS").

5.       After March 2018, TCS billed students for services, performed all contracted

services and collected payment.  TCS agreed to pay the Debtor a percentage of sales for its sales

services.  In September 2018, this arrangement changed.  In September 2018, the Debtor (CAC)

ceased operations and transferred all of its sales staff to Prime Consulting.  Thereafter, the

Debtor no longer engaged in sales of student loan services and no longer utilized TCS' DPP

platform to record any transactions or upload documents.

6.       The Trustee is seeking CRM data that is not owned by the Debtor or Mr. Kim.

The Trustee knows this because she has issued a Rule 2004 Examination *Duces Tecum* of True

Count Staffing requesting this information [ECF 124].  The return date for the Rule 2004

production is October 11, 2019.  Although neither the Debtor nor Mr. Kim owns the CRM

account, the Debtor and Mr. Kim requested that TCS provide the CRM data for the period of

time that the Debtor was operational (*i.e.*, through September 2018).  TCS is utilizing a vendor,

Setec, to retrieve the DPP files relating to the Debtor.  That process has taken longer than

expected, despite best efforts.

7.      TCS's DPP password and log-in are proprietary to TCS and are not the Debtor's or Mr. Kim's property.  The TCS DPP account contains information concerning TCS's business transactions, from September 2018 to the present time, to which the Debtor was not a party. Regardless, TCS is voluntarily cooperating in retrieving and delivering the CRM data maintained by DPP that reflects the Debtor's activities when it was operational.

8.      To date, Mr. Kim's counsel has obtained and delivered to the Trustee CSV (comma-separated values format) files containing the data for the Debtor's transactions (telephone information, customer names, payment information, etc.).  A CSV file is a delimited text file that uses a comma to separate values.  A CSV file stores tabular data (numbers and text) in plain text. Each line of the file is a data record.  Each record consists of one or more fields, separated by commas.  The data is reviewable through Microsoft Excel, and other software may be available to access the data.  Mr. Kim is willing to assist the Trustee in making sure that the data is accessible.  This data was delivered to the Trustee on Monday, August 26, 2019.  A Sharefile was made available on a site posted by the law firm Venable, LLP, counsel to TCS.

9.      The process of downloading documents and other files stored on AWS has taken much longer.  Setec has been downloading files from AWS for several weeks.  The total number of separate files is estimated to be over 3 million.  The total amount of storage is estimated to be in the area of 3 terabytes.  The download rate for downloading computer files from AWS is very slow.  The downloading took a substantial amount of time due to the number of files and the slow download rate.

10.     Setec recently completed the downloading of the AWS pdf and other text and data files, and the files are presently being organized by another vendor, Xact Data Discovery, to separate the Debtor documents/data (through September 2018) from the TCS documents/data.  It

is expected that the Debtor will be in a position to complete its production of the Debtors' CRM data to the Trustee by Friday, September 20, 2019.[1]

11.    The Debtor does not own, hold or control the CRM data that it created and utilized when it was operating.  In response to the Trustee's request for turnover, it would have been easy to respond "none" and to direct the Trustee to seek the data from third parties.  Instead, the Debtor and Mr. Kim are cooperating to retrieve the data utilizing vendors employed by others.  The process has taken longer than anticipated.  But, the Debtor does not own the DPP account and cannot provide the Trustee with on-line access to that account.  Once the Trustee obtains all of the Debtor-related CRM data, it is expected that the Trustee will preserve the confidentiality of third party personal and financial information.  The data contains confidential student identifiers, financial information and account information.

12.    Because the Debtor ceased conducting business in September 2018, other than very minimal telephone lead brokering conducted by Mr. Kim post-petition, the customer files are likely to be of little use or relevance in the tasks of estate administration or asset recovery. Nevertheless, the Debtor and Mr. Kim are doing everything in their power to provide the information.

<u>**PRODUCTION OF OTHER INFORMATION**</u>

13.    The Debtor does not own any computer servers.  Mr. Kim, through counsel, offered to turnover to the Trustee the desk top computers the Debtor formerly used.  This offer was made on August 19, 2019.  Several days later, Trustee's counsel asked for a contact person and telephone number.  That information was provided on August 27, 2019.  The Trustee has not

---

[1] The exception may be MP3 files which take longer to download.

yet made arrangements to pick up the computers, which are located at 173 Technology Drive in

Irvine, California.[2]

14.    On August 21, 2019, Mr. Kim, through counsel, provided to the Trustee the log-

on and password for the Debtor's accounting data maintained on a cloud service provided by

QuickBooks.  It appears that the Trustee has been able to access the Debtor's QuickBooks

accounts and reports.  Neither the Trustee nor her counsel has reported any difficulty in this area.

Further, the Trustee has served a series of subpoenas to third parties (credit card processors,

banks, vendors, and others), and it appears that the Trustee utilized the accounting information

available on QuickBooks as source information for the subpoenas.

15.    On August 21, 2019, Mr. Kim, through counsel, provided to the Trustee a

spreadsheet of log-ons and passwords for two banks, five merchant accounts, two merchant

account gateways and ADP.  Mr. Kim's counsel advised the Trustee's counsel that some of the

accounts had been terminated and that the log-on and password for a third bank, Sunwest Bank,

could not be located.  Because the Debtor ceased conducting a substantial portion of its business

in March 2018 and completely ceased operations in September 2018, several on-line accounts

were closed, and the Debtor lost access.  On September 16, 2019, Mr. Kim, through counsel,

provided an updated spreadsheet designating the particular accounts that are closed and no

longer available on-line.

---

[2] The computers have not been searched or tampered with in any way.  However, the hard drives may or may not contain any data of importance.  In some instances, when employees left CAC, their desk top computers were re-formatted in the ordinary course of business.  The Debtor has not made any investigation to determine what data remains on these computers.  As already discussed, the Debtor recorded its transactions, communications with customers and documents on the cloud services maintained by DPP and AWS, not on the Debtor's own computer network, servers or hard drives.

16.     Mr. Kim understands that the Debtor's ADP on-line access is still available. Through counsel, Mr. Kim provided the log-on and password for ADP.  The Trustee never advised of any difficulties.  The Debtor and Mr. Kim first learned that the Trustee had been unable to access the ADP on-line account in reading the Trustee's response memorandum, filed on Thursday, September 12, 2019.  However, on August 26, 2019, the Debtor provided to the Trustee, through a Sharefile, a link to pertinent ADP reports for the Debtor.  The Trustee does not mention the provision of this Sharefile link in the Trustee's Response.

17.     The Debtor and Mr. Kim will fully cooperate with the Trustee to enable the Trustee to obtain access to the ADP on-line account, if that is possible.  It appears that the ADP Workforce platform requires the answer to a security question, in addition to a log-in and password.  Mr. Kim is endeavoring to obtain that information.

18.     The Trustee is correct that the Debtor and/or Mr. Kim, through counsel, provided its QuickBooks data, a list of its employees, a list of all merchant processing companies that did business with the Debtor, a list of the marketing companies and the catalog processing company that did business with the Debtor, the Debtor's bank statements and tax returns.  Mr. Kim, through counsel, also provided the Debtor's corporate records, employee handbook, form of client fee agreement, form of vendor services agreement and other specific documents within the categories of documents identified by the Trustee.

19.     The Trustee requested agreements or other documents reflecting or evidencing the sale of the business to TCS.  As counsel for Mr. Kim advised the Court at the last hearing in this case, there are no written sale agreements.  The transfer of the business was effectuated pursuant to an oral agreement, not a written agreement.  The Debtor and Mr. Kim have identified only a few agreements evidencing the transfer.  The Debtor previously provided an Assignment of

Lease.  Mr. Kim's counsel provided to the Trustee's counsel copies of the Debtor's notices to employees relating to their change of employment.  Today, Mr. Kim's counsel provided to the Trustee's counsel copies of the DPP account transfer documents.  The Debtor and Mr. Kim have used best efforts to identify agreements and other documents relating to the transfer.

20.    Based on information supplied by Mr. Kim, the Trustee was able to obtain information concerning the status of two merchant accounts, and the Trustee learned that there are reserves held by the merchant account processors that were not disclosed in the Debtor's Schedules as assets.  Mr. Kim understood that these funds were not the Debtor's funds, but, instead, were reserves established by the credit card processors for refunds, chargebacks and other expenses.  Mr. Kim may have misunderstood the status of the funds, but his non-disclosure was unintentional.  The Trustee can assure herself that neither Mr. Kim not anyone else associated with the Debtor has withdrawn, or attempted to withdraw, any reserve funds or has made any effort to obtain the funds.  The Debtor is informed that the Trustee is making efforts now to obtain turnover of the reserves.  The Debtor will be amending its schedules to disclose all known reserves maintained by credit card processors as of the Petition Date.

**SUMMARY AND CONCLUSION**

21.    Since mid-August, the Debtor and Mr. Kim have been endeavoring to comply with the Trustee's turnover request and the Turnover Order.  They have been utilizing their best efforts. The primary source of data that has been delayed is the CRM data.  The Debtor does not own the CRM data.  Nevertheless, the Debtor and Mr. Kim have undertaken substantial efforts to provide it, and it will be provided.  The Trustee apparently seeks the current log-on and password, but neither the Debtor nor Mr. Kim owns rights in the log-on and password nor any rights in the data that is owned by third parties.

22.    Because of the status of the Debtor's business – essentially non-operating since September 2018 – this was not a standard turnover situation in which the Debtor could simply open its doors and deliver its computers, accounts, equipment and documents.  There were no operations or operational assets to turn over.  Still, the Debtor and Mr. Kim provided everything they could provide, the most difficult issue being the CRM data.  The Debtor and Mr. Kim expect the process of delivering the CRM data/files to be completed by September 20, 2019.

23.    The delay that has occurred has not caused any prejudice.  There is no ongoing business.  No data or documents have been altered or destroyed.  No accounts have been drawn on.  No funds or physical assets have disappeared.  The Trustee actually has all the information needed to administer the estate.  The still missing information concerns the student transactions that occurred while the Debtor was operating.  That data is expected to be supplied to the Trustee soon and not later than September 20, 2019.


**WHEREFORE**, the Debtor and Albert Kim seek the entry of an Order (i) granting the Motion; (ii) enlarging the time for the Debtor and Mr. Kim to comply with the provision of the Turnover Order relating to CRM data to September 20, 2019, and (iii) granting such other relief as the Court may deems just and proper.

**BEHAR, GUTT & GLAZER, P.A.**
Attorneys for Debtor
DCOTA, Suite A-350, 1855 Griffin Road
Fort Lauderdale, Florida 33004
Telephone: (305) 931-3771/Fax: (305) 931-3774

By: /s/ *Brian S. Behar*
Brian S. Behar
Fla. Bar. No.: 727131

8

**SHUTTS & BOWEN LLP**
Attorneys for Albert Kim
200 South Biscayne Blvd., Suite 4100
Miami, FL  33131
Telephone: (305) 358-6300/ Fax: (305) 381-9982

By: */s/ Peter H. Levitt*
Peter H. Levitt
Fla. Bar No.: 650978

## CERTIFICATE OF SERVICE

**I  HEREBY  CERTIFY** that a true and correct copy of the foregoing Reply Memorandum was served via the Court's Case Management/Electronic Case Filing System upon all interested creditors and parties registered to receive electronic notification on this matter and/or via U.S. Mail/E-mail as indicated on the attached Service List on this 16th day of September, 2019.

*/s/ Peter H. Levitt*
Peter H. Levitt

*Electronic Mail Service List*

- Brian S Behar
  bsb@bgglaw.net

- Glenn D Moses
  gmoses@gjb-law.com, gjbecf@gjb-law.com;chopkins@gjb-law.com; vlambdin@gjb-law.com;jzamora@gjb- law.com;gjbecf@ecf.courtdrive.com;ecastellanos@gjb-law.com

- Office of the US Trustee
  USTPRegion21.MM.ECF@usdoj.gov

- Sarah Preis
  sarah.preis@cfpb.gov

- Zana Michelle Scarlett
  Zana.M.Scarlett@usdoj.gov

- Sonya Salkin Slott
  sonya@msbankrupt.com, FL41@ecfcbis.com;
  sls1@trustesolutions.net;mark@msbankrupt.com;Kristen@msbankrupt.com;sls@msbankrupt.com;trusteesalkin@msbankrupt.com;Zachary@msbankrupt.com

- Jesse D Stewart
  jesse.stewart@cfpb.gov

- Larry I. Glick
  lglick@shutts.com

*U.S. Mail Service List*

Laurel Loomis Rimon
lrimon@omm.com
O'Melveny & Myers LLP
1625 Eye Street, NW Washington, DC 20006
Co-Counsel for Albert Kim