**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| Bureau of Consumer Financial Protection, et al.<br><br>     Plaintiffs,<br><br>     v.<br><br>Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center, et al.<br><br>     Defendants. | CASE NO. 8:19-cv-01998 JVS (JDEx)<br><br>**STIPULATED PRELIMINARY INJUNCTION WITH ASSET FREEZE, APPOINTMENT OF RECEIVER, AND OTHER EQUITABLE RELIEF** |

     Plaintiffs, the Bureau of Consumer Financial Protection (Bureau), the State of Minnesota, the State of North Carolina, and The People of the State of California (collectively, Plaintiffs) commenced this civil action on October 21, 2019, alleging violations of state and federal law against the Defendants. The Bureau has filed the complaint under the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536(a), 5564, and 5565, and the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6102(c)(2), 6105(d)

1

(Telemarketing Act), based on Defendants' violations of the CFPA and the Telemarketing Sales Rule (TSR), 16 C.F.R. pt. 310. The State of Minnesota has alleged violations of the Minnesota Prevention of Consumer Fraud Act (MNCFA), Minn. Stat. §§ 325F.68-.694, the Minnesota Uniform Deceptive Trade Practices Act (MNDTPA), Minn. Stat. §§ 325D.43-.48, and the Telemarketing Act and its implementing regulation, the TSR. The State of North Carolina has alleged violations of North Carolina's Debt Adjusting Act (NCDAA), N.C. Gen. Stat. § 14-423 *et seq.*, North Carolina's Telephonic Seller Registration Act (NCTSRA), N.C. Gen. Stat. § 66-260 *et seq.*, North Carolina's Unfair and Deceptive Practices Act (NCUDPA), N.C. Gen. Stat. § 75-1.1, and the Telemarketing Act and its implementing regulation, the TSR. The People of the State of California have alleged violations of California's Business and Professions Code 17200 *et seq.* (the Unfair Competition Law or UCL), and the Telemarketing Act and its implementing regulation, the TSR.

The Complaint alleges that Defendants' acts or practices violate these laws in connection with the marketing and sale of student-loan debt-relief services. The Complaint seeks permanent injunctive relief, damages, rescission or reformation of contracts, the refund of monies paid, restitution, disgorgement, compensation for unjust enrichment, and civil money penalties.

The Bureau also moved for a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, and an order to show cause why a preliminary injunction should not issue against Defendants and Relief Defendants. California, Minnesota, and North Carolina joined that motion. On October 21, 2019, this Court granted Plaintiffs' motion and entered the Temporary Restraining Order (TRO), which included an asset freeze as to Defendants (except Consumer Advocacy Center, Inc., whose assets are currently overseen by a Chapter 7 bankruptcy trustee) and Relief Defendants; preliminary injunctive relief as to all Defendants, and the appointment of a temporary receiver over Defendants True

Count Staffing Inc. (True Count) and Prime Consulting LLC (Prime), and other equitable relief.  The Court also ordered all named Defendants to show cause as to why the Court should not enter a preliminary injunction (Order) enjoining the violations of law alleged in Plaintiffs' Complaint, continuing the freeze of their Assets, and imposing such additional relief as may be appropriate.

The Plaintiffs and all Defendants, except for the Chapter 7 Trustee on behalf of Defendant Consumer Advocacy Center Inc., have agreed to the entry of this preliminary injunction order, and the Chapter 7 Trustee having advised the Court separately  that his does not oppose entry of this order.

**THEREFORE, IT IS ORDERED** as follows:

### FINDINGS

By stipulation of the parties, the Court finds that:

1.      This Court has jurisdiction over the subject matter of this case, there is good cause to believe that it will have jurisdiction over all the parties hereto, and venue in this district is proper;

2.      There is good cause to believe that Defendants: (a) Consumer Advocacy Center Inc., a California corporation, d/b/a Premier Student Loan Center, (collectively CAC); (b) True Count Staffing Inc., a California Corporation, d/b/a SL Account Management (collectively True Count); (c) Prime Consulting LLC, a Wyoming limited liability corporation registered to operate in California d/b/a Financial Preparation Services (collectively, Prime); (d) Albert Kim (aka Albert King), an individual; (e) Kaine Wen (aka Wenting Kaine Dai, Wen Ting Dai, Kaine Wen Dai), an individual; and (f) Tuong Nguyen (aka Tom Nelson), an individual, have engaged and are likely to continue to engage in acts or practices that violate the CFPA, the TSR, the MNCFA, the MNDTPA, the NCDAA, the NCTSRA, the NCUDPA, and the UCL. And, there is good cause to believe that Relief Defendants (a) Infinite Management Corp., a California corporation, formerly known as Infinite Management Solutions Inc., (b) Hold The Door, Corp.,

a California corporation, and (c) TN Accounting Inc., a California corporation, have received funds or assets and are likely to continue to receive funds or assets that can be traced directly to Defendants' unlawful acts and practices. Plaintiffs are therefore likely to prevail on the merits of this action;

3.     There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of these laws unless Defendants and Relief Defendants are preliminarily restrained and enjoined by Order of this Court;

4.     There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers in the form of monetary damages, restitution, and disgorgement or compensation for unjust enrichment will occur from the transfer, dissipation, or other disposition or concealment by Defendants and Relief Defendants of their assets or business records unless Defendants and Relief Defendants continue to be restrained and enjoined by Order of this Court;

5.     Good cause exists for continuing the receivership over True Count and Prime and permitting Plaintiffs continued access to Defendants' business premises at the discretion of the Receiver;

6.     Weighing the equities and considering Plaintiffs' likelihood of ultimate success on the merits, this Order is in the public interest;

7.     The automatic stay of the Bankruptcy Code does not stay the relief granted herein against CAC, which has filed for bankruptcy in United States Bankruptcy Court in the Southern District of Florida, Fort Lauderdale Division, Case No. 10-10655, because the relief granted herein falls within the police and regulatory power exception to the automatic stay set forth in 11 U.S.C. § 362(a), (b)(4);

8.     This Court has authority to issue this order pursuant to 12 U.S.C. § 5565 and Federal Rule of Civil Procedure 65; and

4

9.      As the Bureau is an agency of the United States, no security is required for this Order. Fed. R. Civ. P. 65(c).

10.      No security is required of the States of Minnesota, North Carolina, or California for issuance of a preliminary injunction.  *See* Minn. Stat. § 574.18; *State v. Nelson*, 189 Minn. 87, 89-90, N.W. 751, 752 (1933); N.C. R. Civ. Proc. 65(c); Cal. Code Civ. Proc. § 529, subd. (b)(3).

## DEFINITIONS

For the purposes of this Order, the following definitions shall apply:

1.      "**Assets**" means, except as provided herein, any legal or equitable interest in, right to, or claim to any real, personal, or intellectual property owned or controlled by, or held, in whole or in part for the benefit of, or subject to access by any Defendant or Relief Defendant, wherever located, whether in the United States or abroad. This includes, but is not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), funds, cash, and trusts, including, but not limited to any trust held for the benefit of any Individual Defendants' minor children, or any of the Individual Defendants' spouses. It shall include both existing Assets and Assets acquired after the date of entry of this Order, *provided, however*, all legal and equitable interests in property of the chapter 7 debtor, Consumer Advocacy Center

Inc., d/b/a Premier Student Loan Center, which interests are property of the Bankruptcy Estate pursuant to 11 U.S.C. § 541, are excluded from this definition;

2.  **"Assisting Others"** includes, but is not limited to

    a.  providing paralegal or administrative support services;

    b.  performing customer service functions including, but not limited to, receiving or responding to Consumer complaints;

    c.  formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not limited to, any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication;

    d.  formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

    e.  providing names of, or assisting in the generation of, potential customers;

    f.  performing marketing, billing, or payment services of any kind;

    g.  acting or serving as an owner, officer, director, manager, or principal of any entity; and

3.  **"Bankruptcy Estate"** means the bankruptcy estate created within the Bankruptcy Proceeding by operation of law pursuant to 11 U.S.C. § 541;

4.  **"Bankruptcy Proceeding"** means *In re Consumer Advocacy Center Inc.*, Case No. 19-10655, currently pending in the United States Bankruptcy Court, Southern District of Florida, Fort Lauderdale Division;

5.  **"Bureau"** means the Bureau of Consumer Financial Protection;

6.  **"Chapter 7 Trustee"** means Sonya Salkin Slott, the Trustee appointed over Defendant Consumer Advocacy Center Inc. d/b/a Premier Student

Loan Center by the United States Bankruptcy Court, Southern District of Florida, Fort Lauderdale Division in the Bankruptcy Proceeding and any successor trustee.

7.     "**Consumer**" means an individual or an agent, trustee, or representative acting on behalf of an individual;

8.     "**Debt**" means any obligation or alleged obligation to pay money, whether or not such obligation has been reduced to judgment;

9.     "**Debt-Relief Product or Service**" means any product, service, plan, or program represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the Debt between a Consumer and one or more creditors or Debt collectors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a Person to a creditor or Debt collector;

10.     "**Defendants**" means the Corporate Defendants, Individual Defendants, and Relief Defendants, individually, collectively, or in any combination, and each of them by whatever names each might be known;

       a.     "**Corporate Defendants**" means Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center, True Count Staffing Inc., d/b/a SL Account Management, Prime Consulting LLC, d/b/a Financial Preparation Services, and any other name by which each Corporate Defendant may be known or operate;

       b.     "**Individual Defendants**" means Albert Kim (aka Albert King), Kaine Wen (aka Wenting Kaine Dai, Wen Ting Dai, Kaine Wen Dai), and Tuong Nguyen (aka Tom Nelson), and any other name by which each Individual Defendant may be known;

       c.     "**Receivership Defendants**" means True Count Staffing Inc., d/b/a SL Account Management, Prime Consulting LLC, d/b/a Financial Preparation Services, TAS 2019 LLC d/b/a Trusted Account Services, First Priority LLC, and Horizon Consultants LLC,

and their successors, assigns, affiliates, or subsidiaries, and each of them, by whatever names each may be known, provided that the Receiver has reason to believe they are owned or controlled in whole or in part by any of the Receivership Defendants;

    d.    "**Relief Defendants**" means Infinite Management Corp., f/k/a Infinite Management Solutions Inc., Hold The Door, Corp., TN Accounting Inc., and any other name by which each Relief Defendant may be known or operate; and

11.    "**Document**" and "**Electronically Stored Information**" are synonymous in meaning and equal in scope to the usage of the terms in Rule 34(a) of the Federal Rules of Civil Procedure and include but are not limited to:

    a.    the original or a true copy of any written, typed, printed, electronically stored, transcribed, taped, recorded, filmed, punched, or graphic matter or other data compilations of any kind, including, but not limited to, letters, email or other correspondence, messages, memoranda, paper, interoffice communications, notes, reports, summaries, manuals, magnetic tapes or discs, tabulations, books, records, checks, invoices, work papers, journals, ledgers, statements, returns, reports, schedules, files, charts, logs, electronic files, stored in any medium;

    b.    any electronically created or stored information, including but not limited to electronic mail, instant messaging, videoconferencing, SMS, MMS, or other text messaging, and other electronic correspondence (whether active, archived, unsent, or in an deleted items folder), word processing files, spreadsheets, databases, Document metadata, presentation files, and sound recordings, whether stored on any cell phones, smartphones, flash drives, personal digital assistants ("PDAs"), cards, desktop personal

8

computer and workstations, laptops, notebooks and other portable computers, or other electronic storage media, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether assigned to individuals or in pools of computers available for shared use, or personally owned but used for work-related purposes, whether stored on-site with the computer used to generate them, stored offsite in another company facility, or stored, hosted, or otherwise maintained off-site by a third party; and computers and related offsite storage used by Defendants or Defendants' participating associates, which may include Persons who are not employees of the company or who do not work on company premises; and

12. "**Electronic Data Host**" means any Person or entity that stores, hosts, or otherwise maintains electronically stored information;

13. "**Financial Institution**" means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer;

14. "**Person**" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity;

15. "**Plaintiffs**" means the Bureau of Consumer Financial Protection, the State of Minnesota, the State of North Carolina, and the People of the State of California;

16. "**Receiver**" means the receiver appointed in Section XII of this Order and any deputy receivers that shall be named by the receiver;

17. "**Telemarketer**" means any Person who, in connection with Telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(cc); and

9

18.     "**Telemarketing**" means a plan, program, or campaign (whether or not covered by the TSR, 16 C.F.R. Part 310) that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

## ORDER

## I.  RESTRICTIONS ON ADVANCE FEES

**IT IS FURTHER ORDERED** that, in connection with Telemarketing, Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from requesting or receiving payment or fees or consideration for any Debt-Relief Product or Service before:

A.  They have negotiated, settled, reduced, or otherwise altered the terms of at least one Debt pursuant to a settlement agreement, Debt management plan, or other such valid contractual agreement executed by the customer; and

B.  The customer has made at least one payment pursuant to that agreement.

## II. PROHIBITED REPRESENTATIONS AND CONDUCT

**IT IS FURTHER ORDERED** that Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, performance of any Debt-Relief Product or Service, are hereby preliminarily restrained and enjoined from falsely representing, or from Assisting Others who are falsely representing, expressly or by implication,

10

any material aspect of any service performed by the Defendant or any other person, including, but not limited to:

    A. The nature, purpose, or any other material aspect of any fee collected by any Defendant or any other person;

    B. That any Defendant or any other Person will or likely will help obtain forgiveness of any loan under a federal student loan forgiveness program; and

    C. That any Defendant or any other Person will or likely will help obtain lower payments on any loan under a federal student loan repayment program.

**IT IS FURTHER ORDERED** that Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, performance of any Debt-Relief Product or Service, are hereby preliminarily restrained and enjoined from engaging in violations of the MNCFA, the MNDTPA, the NCDAA, the NCTSRA, the NCUDPA, and the UCL.

### III.   PRESERVATION OF RECORDS AND TANGIBLE THINGS

**IT IS FURTHER ORDERED** that Defendants and their successors, assigns, officers, agents, servants, employees, independent contractors, and attorneys, and those Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or indirectly are hereby preliminarily enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any Documents or

11

records that relate to the business practices, or business or personal finances of any Defendant, or other entity directly or indirectly under the control of any Defendant.

## IV.    WEBSITES

**IT IS FURTHER ORDERED** that, immediately upon service of this Order upon them and to the extent not already done so pursuant to the TRO, (1) any Person hosting any Internet website for, or on behalf of, any Defendant, and (2) Defendants and their successors, assigns, officers, agents, servants, employees, independent contractors, and attorneys, and those Persons in active concert or participation with any of them, who receive actual notice of this order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, shall:

A. Prevent the destruction or erasure of any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or performance of any Debt-Relief Service, by preserving such website in the format in which it is maintained currently; and

B. Immediately notify Plaintiffs' counsel, in writing, of any other Internet website operated or controlled by any Defendant.

## V.  INTERNET DOMAIN NAME REGISTRATIONS

**IT IS FURTHER ORDERED** that upon service of this Order and to the extent not already done so pursuant to the TRO, any domain name registrar shall provide immediate notice to Plaintiffs' counsel of any Internet domain names registered or controlled by any Defendants.

## VI.    ASSET FREEZE

**IT IS FURTHER ORDERED** that Receivership Defendants, Individual Defendants, or Relief Defendants, and their successors, assigns, officers, agents, servants, employees, independent contractors, and attorneys, and all Persons directly or indirectly under the control of any of them, including any Financial Institution, and all other Persons in active concert or participation with any of

12

them, who receive actual notice of this Order by personal service, facsimile, email, or otherwise, are hereby preliminarily restrained and enjoined from directly or indirectly:

   A. Selling, liquidating, assigning, transferring, converting, loaning, hypothecating, disbursing, gifting, conveying, encumbering, pledging, concealing, dissipating, spending, withdrawing, or otherwise disposing of any Asset that is:

      1. owned or controlled, directly or indirectly, by any Defendant, including, but not limited to those for which a Defendant is a signatory on the account;

      2. held, in part or in whole, for the benefit of any Defendant

      3. in the actual or constructive possession of any Defendant; or

      4. in the actual or constructive possession of, or owned or controlled by, or subject to access by, or belonging to, any corporation, partnership, trust or other entity directly or indirectly owned, managed or controlled by any Defendant; and

   B. Opening, or causing to be opened, any safe deposit box, commercial mail box, or storage facility belonging to, for the use or benefit of, controlled by, or titled in the name of any Defendant or subject to access by any Defendant;

   C. Incurring charges or cash advances on any credit card, stored value card, debit card, or charge card issued in the name, singly or jointly, of any Defendant or any other entity directly or indirectly owned, managed, or controlled by any Defendant;

   D. Cashing any checks or depositing or processing any payment from any Consumer, client, or customer of any Defendant; and

   E. Incurring liens or encumbrances on real property, personal property, or other Assets in the name, singly or jointly, of Defendants or of any

13

corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant.

F. Notwithstanding Section VI.D, this Order does not prevent Individual Defendants from opening new bank or credit card accounts so long as such accounts are funded only with monies not attributable to the activities alleged in the Bureau's Complaint, and so long as the Individual Defendants contemporaneously notify the Receiver and the Bureau in writing of such openings, the source of the funds for any such accounts, and the intended source of such funds in the future.

**IT IS FURTHER ORDERED** that the Assets affected by this Section shall include: (a) all Assets of each Receivership Defendant, Individual Defendant, or Relief Defendant, as of the time this Order is entered, and (b) those Assets obtained or received after entry of this Order that are derived, directly or indirectly, from the actions alleged in Plaintiffs' Complaint or actions that are prohibited by this Order. This Section does not prohibit transfers to the Receiver, as specifically required in Section XVI (Delivery of Receivership Property), nor does it prohibit the Repatriation of Foreign Assets, as specifically required in Section X of this Order, nor does it prohibit the transfers of property of the Bankruptcy Estate to the Chapter 7 Trustee.

## VII.   RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that, except as otherwise ordered by this Court, any Financial Institution, brokerage, business entity, Electronic Data Host, payment processor, merchant bank, payment gateway, or Person served with a copy of this Order, or who otherwise has actual or constructive knowledge of this Order, that has held, controlled, or maintained custody of any account, Document, or Asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant, or

14

other party subject to Section VI (Asset Freeze) above, or has held, controlled, or maintained any such account, Document, or Asset shall:

    A. Hold, preserve, and retain within such person's control, and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of such account, Document, or Asset held by or under such person's control, except (1) as directed by further order of the Court; (2) as directed in writing by the Receiver regarding accounts, Documents, or Assets held in the name of or benefit of any Defendant; or (3) as directed in writing by the Chapter 7 Trustee regarding accounts and Assets held in the name of or for the benefit of the Bankruptcy Estate;

    B. Provide the Receiver, the Receiver's agents, Plaintiffs, and Plaintiffs' agents immediate access to Documents, including those electronically stored, hosted, or otherwise maintained on behalf of Defendants, for forensic imaging or copying;

    C. Deny access to any safe deposit box, commercial mail box, or storage facility belonging to, for the use or benefit of, controlled by, or titled in the name of any Defendant, or subject to access by any Defendant or other party subject to Section VI (Asset Freeze) above, except that this subsection shall not limit the Receiver's access to such places, nor shall it limit the Chapter 7 Trustee's access to such places insofar as it relates to property interests of Consumer Advocacy Center Inc. d/b/a Premier Student Loan Center;

    D. Provide to Plaintiffs' counsel, the Receiver, and to the Chapter 7 Trustee as it relates to property interests of Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center, within three business day of receiving a copy of this Order, a sworn statement setting forth:

STIPULATED PRELIMINARY INJUNCTION WITH ASSET FREEZE, APPOINTMENT OF RECEIVER, AND OTHER EQUITABLE RELIEF

1.  the identification of each account or Asset titled in the name, individually or jointly, or held on behalf of or for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant, or other party subject to Section VI (Asset Freeze) above, whether in whole or in part;

2.  the balance of each such account, or a description of the nature and value of such Asset, as of the close of business on the day on which this Order is served;

3.  the identification of any safe deposit box, commercial mail box, or storage facility belonging to, for the use or benefit of, controlled by, or titled in the name of any Defendant, or subject to access by any Defendant, or other party subject to Section VI (Asset Freeze) above, whether in whole or in part;

4.  if the account, safe deposit box, or other Asset has been closed or removed, the date closed or removed, the balance on said date, and the name or the Person or entity to whom such account or other Asset was remitted;

5.  Subsection VII.D does not apply to the Chapter 7 Trustee; and

E.  Provide to Plaintiffs' counsel, the Receiver, and to the Chapter 7 Trustee as it relates to property interests of Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center, within three business days of receiving a request, copies of all Documents pertaining to such account or Asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; provided that such institution or custodian may charge a reasonable fee;

16

F. Cooperate with all reasonable requests of the Receiver relating to this Order's implementation;

G. The accounts subject to this provision include: (a) all Assets of each Defendant deposited as of the time this Order is entered, and (b) those Assets deposited after entry of this Order that are derived from the actions alleged in Plaintiffs' Complaint or actions prohibited by this Order. This Section does not include property of the Bankruptcy Estate under the exclusive control of the Chapter 7 Trustee in the Bankruptcy Proceeding. Further, this Section does not prohibit transfers to the Receiver, as specifically required in Section XVI (Delivery of Receivership Property), nor does it prohibit the Repatriation of Foreign Assets, as specifically required in Section X of this Order, nor does it prohibit the transfer of property of the Bankruptcy Estate to the Chapter 7 Trustee; and

H. Plaintiffs are granted leave, pursuant to Rule 45 of the Federal Rules of Civil Procedure, to subpoena Documents immediately from any Financial Institution, brokerage, business entity, Electronic Data Host, or Person served with a copy of this Order that holds, controls, or maintains custody of any account, Document, or Asset of, on behalf of, in the name of, for the benefit of, subject to access or use by, or under the signatory power of any Defendant or party subject to Section VI (Asset Freeze) above, or has held, controlled, or maintained any such account, Document, or Asset and such financial or brokerage institution, business entity, Electronic Data Host or Person shall respond to such subpoena within three business days after service. This Section does not apply to the Chapter 7 Trustee.

## VIII. FINANCIAL STATEMENTS AND ACCOUNTING

**IT IS FURTHER ORDERED** that as set forth below, each Receivership Defendant, Individual Defendant, and Relief Defendant, to the extent that they have not each done so pursuant to the TRO, within three (3) business days of service of this Order, shall prepare and deliver to Plaintiffs' counsel and to the Receiver:

A. For each Individual Defendant, a completed financial statement accurate as of the date of service of this Order upon such Defendant on the form of Attachment A to this Order captioned "Individual Financial Statement";

B. For each Receivership Defendant and Relief Defendant, a completed financial statement accurate as of the date of service of this Order upon such Defendant (unless otherwise agreed upon with Plaintiffs' counsel) in the form of Attachment B to this Order captioned "Corporate Financial Statement";

C. A list of all officers and directors of the Receivership Defendants and Relief Defendants and all other individuals or entities with authority to direct the operations of each Receivership Defendant and Relief Defendant or withdraw money from the account of such Defendant;

D. For each Receivership Defendant, Individual Defendant, and Relief Defendant, a statement, verified under oath, of all payments, transfers, or assignments of any Assets worth $5,000 or more since January 1, 2015. Such statements shall include: (a) the amount transferred or assigned; (b) the name of each transferee or assignee; (c) the date of the assignment or transfer; and (d) the type and amount of consideration paid by or to the Defendant. Each statement shall specify the name and address of each Financial Institution at which Receivership Defendant, Individual Defendant, or Relief Defendant, has accounts or safe deposit boxes; and

18

E. For each Receivership Defendant, Individual Defendant, and Relief Defendant, a detailed accounting, verified under oath, of all gross and net profits obtained from, derived from, or related in any way to the offer for sale or sale of any Debt-Relief Product or Service since January 1, 2015.

F. For each Receivership Defendant, Individual Defendant, and Relief Defendant, other than identifying the name and address of the Financial Institution responsive to Section 8.D, compliance with Sections 8.D and 8.E shall be based on information within each Defendants' possession, custody, and control.

## IX. CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), Plaintiffs may obtain credit reports concerning any Defendant or Relief Defendant, and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiffs.

## X. REPATRIATION OF FOREIGN ASSETS

**IT IS FURTHER ORDERED** that, to the extent not already done so pursuant to the TRO, within three business days following the service of this Order, each Defendant shall:

A. Provide Plaintiffs' counsel and the Receiver with a full accounting, verified under oath and accurate as of the date of this Order, of all Assets, accounts, and Documents outside of the territory of the United States of America that are held (1) by the Defendant; (2) for any Defendant's benefit or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by any Defendant; (3) in trust by or for any Defendant, individually or jointly; or (4) under any Defendant's direct or indirect control, individually or jointly;

19

B. Transfer to the territory of the United States of America all Assets, accounts, and Documents in foreign countries held (1) by any Defendant; (2) for any Defendant's benefit; (3) in trust by or for any Defendant, individually or jointly; or (4) under any Defendant's direct or indirect control, individually or jointly;

C. Hold and retain all repatriated Assets, accounts, funds, and Documents, and prevent any transfer, disposition, or dissipation whatsoever of any such Assets, accounts, or Documents;

D. Provide Plaintiffs access to all records of accounts, Documents, or Assets of the Receivership Defendant, Individual Defendant, or Relief Defendant held by Financial Institutions or other third parties located outside the territorial United States of America by signing the Consent to Release of Financial Records attached to this Order as Attachment C. All repatriated Assets, accounts, and Documents are subject to Section VI (Asset Freeze) of this Order; and

E. The same business day as any repatriation, (1) notify the Receiver and counsel for Plaintiffs of the name and location of the Financial Institution or other entity that is the recipient of such Assets, accounts, and Documents; and (2) serve this Order on any such Financial Institution or other entity.

F. This Section does not apply to the Chapter 7 Trustee.

G. Section X.B above may be modified or stayed by agreement of the parties without further order of the Court.

## XI. NONINTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, are

20

hereby preliminarily restrained and enjoined from taking any action, directly or indirectly, which may result in the hindrance of the repatriation required by Section X of this Order, including, but not limited to:

    A. Sending any statement, communication, letter, fax, email or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Assets have been fully repatriated pursuant to Section X (Repatriation of Foreign Assets) of this Order; or

    B. Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Assets have been fully repatriated pursuant to Section X (Repatriation of Foreign Assets) of this Order.

## XII.   MONITORING OF BUSINESS ACTIVITY BY PLAINTIFFS

**IT IS FURTHER ORDERED** that agents or representatives of Plaintiffs may contact Defendants directly or anonymously, posing as consumers, suppliers, or other individuals or entities, without the necessity of identification or prior notice, for the purpose of monitoring compliance with the injunctive provisions of this Order, and may tape record any oral communications that occur in the course of such contacts.

## XIII.  REPORT OF NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint

venture, sole proprietorship, or corporation, without first providing Plaintiffs' counsel and the Receiver with a written statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## XIV. APPOINTMENT OF RECEIVER

**IT IS FURTHER ORDERED** that Thomas W. McNamara shall continue to serve as Receiver for the business activities of Receivership Defendants with the full power of an equity receiver. The Receiver shall solely be the agent of this Court in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court. The Receiver shall comply with all laws and Local Rules of this Court governing federal equity receivers.

## XV. DUTIES AND AUTHORITIES OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A. Assume full control of the Receivership Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any of the Receivership Defendants, including but not limited to any named Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

B. Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated. The Receiver will assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Defendants. The Receiver shall have full power to divert mail and to sue for, collect, receive, take

into possession, hold, and manage all Assets and Documents of the Receivership Defendants and other Persons whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants. *Provided, however,* however, that the Receiver will not attempt to collect or receive any amount from a Consumer if the Receiver or Plaintiffs believes the Consumer was a victim of the unlawful conduct alleged in the complaint in this matter;

C. Take all steps necessary to secure the business premises of the Receivership Defendants. Such steps may include, but are not limited to, the following as the Receiver deems necessary or advisable:

   1. serving and filing this Order;

   2. completing a written inventory of all Receivership Assets;

   3. obtaining pertinent information from all employees and other agents of the Receivership Defendants, including but not limited to, the name, home address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent, and all computer hardware and software passwords;

   4. videotaping or photographing all portions of such business premises;

   5. securing the location by changing the locks and alarm codes and disconnecting any internet access or other means of access to the computers, servers, internal networks, or other records maintained at that location;

   6. requiring any Persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the

23

Receiver that such Persons are not removing from the premises Documents or Assets of the Receivership Defendants;

7. requiring all employees, independent contractors, and consultants of the Receivership Defendants to complete a questionnaire submitted by the Receiver; and

D. Conserve, hold, and manage all Receivership Defendants' Assets, and perform all acts necessary or advisable to preserve the value of those Assets, in order to prevent any irreparable loss, damage, or injury to Consumers or to creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the Assets and preventing transfer, withdrawal, or misapplication of Assets;

E. Liquidate any and all securities or commodities owned by or for the benefit of the Receivership Defendants as the Receiver deems to be advisable or necessary;

F. Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Defendant, and to provide access to all such web page or websites to Plaintiffs' representatives, agents, and assistants, as well as Defendants and their representatives;

G. Enter into contracts and purchase insurance as the Receiver deems to be advisable or necessary;

H. Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of Consumers and creditors who have transacted business with the Receivership Defendants;

I. Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

24

J.  Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

K.  Make payments and disbursements from the Receivership Defendants' estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any Debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Defendants, such as rental payments;

L.  Determine and implement measures to ensure that the Receivership Defendants comply with and prevent violations of this Order and all other applicable laws, including, but not limited to, if appropriate, revising sales materials and implementing monitoring procedures;

M. Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Defendants, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order, including but not limited to actions challenging fraudulent or voidable transfers, *provided, however*, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer's liability to the Receivership Entities has resulted from the violations of law alleged in the Complaint in this matter, without prior Court approval;

N.  Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in

25

his or her role as Receiver, or against the Receivership Defendants, that the Receiver deems necessary and advisable to preserve the Assets of the Receivership Defendants or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

O. Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; *provided, however*, that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the businesses can be lawfully operated at a profit using the Assets of the Receivership Defendants' estate;

P. Take depositions and issue subpoenas to obtain Documents and records pertaining to the receivership estate and compliance with this Order. Subpoenas may be served by agents or attorneys of the Receiver and by agents of any process server retained by the Receiver;

Q. Open one or more bank accounts as designated depositories for funds of the Receivership Defendants. The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such account(s);

R. Maintain accurate records of all receipts and expenditures that made as Receiver;

S. Cooperate with reasonable and lawful requests for information or assistance from any state or federal law enforcement agency;

T. If the Receiver identifies a nonparty entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can challenge the Receiver's determination by filing a motion with the Court. Provided, however, that the Receiver may delay providing such

26

notice until the Receiver has established control of the nonparty entity and its Assets and records, if the Receiver determines that notice to the entity may result in the destruction of records, dissipation of Assets, or any other obstruction of the Receiver's control of the entity;

U. Maintain the chain of custody of all of Defendants' records in their possession;

V. Notify all courts in which Receivership Defendants have litigation pending, that this case is pending, and request temporary stays, where appropriate, of those cases or any other necessary relief to preserve the rights of Consumers; and

W. If in the Receiver's judgment the business operations cannot be continued legally and profitably, take all steps necessary to ensure that any of the Receivership Entities' web pages or websites relating to the activities alleged in the Complaint cannot be accessed by the public, or are modified solely for consumer education and/or informational purposes, and take all steps necessary to ensure that any telephone numbers associated with the Receivership Entities cannot be accessed by the public, or are answered solely to provide consumer education or information regarding the status of operations.

## XVI. CONTINUING ACCESS TO BUSINESS PREMISES AND RECORDS

**IT IS FURTHER ORDERED** that, consistent with Section XIV of the TRO, that Plaintiffs, the Receiver, and their respective representatives, agents, contractors, or assistants, and the Chapter 7 Trustee as it relates to property of the Bankruptcy Estate, are granted continued access to the Receivership Defendants' business premises and records.

## XVII. COOPERATION WITH RECEIVER

**IT IS FURTHER ORDERED** that:

A. Receivership Defendants, Individual Defendants, and Relief Defendants and their successors, assigns, officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, and corporations, and all other Persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, or any of them, shall fully cooperate with and assist the Receiver. Receivership Defendants', Individual Defendants', and Relief Defendants' cooperation and assistance shall include, but not be limited to:

1. Providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver under this Order, including but not limited to allowing the Receiver to inspect Documents and Assets and to partition office space;

2. Providing any username or password and executing any Documents required to access any computer or electronic files in any medium, including but not limited to Electronically Stored Information stored, hosted, or otherwise maintained by an Electronic Data Host;

3. Advising all Persons who owe money to the Receivership Defendants that all Debts should be paid directly to the Receiver; and

B. Receivership Defendants, Individual Defendants, and Relief Defendants and their successors, assigns, officers, directors, agents, servants, employees, attorneys, and all other Persons or entities directly or

28

indirectly, in whole or in part, under their control, and all other Persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, shall not interfere in any manner, directly or indirectly with the custody possession, management, or control by the Receiver of Assets and Documents, and are hereby preliminarily restrained and enjoined from directly or indirectly:

1. Transacting any of the business of the Receivership Defendants;

2. Destroying, secreting, erasing, mutilating, defacing, concealing, altering, transferring or otherwise disposing of, in any manner, directly or indirectly, any Documents or equipment of Defendants, including but not limited to contracts, agreements, Consumer files, Consumer addresses and telephone numbers, correspondence, advertisements, brochures, sales material, sales presentations, Documents evidencing or Defendants' services, training materials, scripts, data, computer tapes, disks, or other computerized records, books, written or printed records, handwritten notes, telephone logs, "verification" or "compliance" tapes or other audio or video tape recordings, receipt books, invoices, postal receipts, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or property tax returns, photographs, mobile devices, electronic storage media, accessories, and any other Documents, records or equipment of any kind that relate to the business practices or business or personal finances of the Defendants or any other entity directly or indirectly under the control of the Defendants;

3. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned,

29

controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Receiver;

4. Excusing Debts owed to the Receivership Defendants;

5. Failing to notify the Receiver of any Asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant, or by any Person or entity other than the Receivership Defendant, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such Assets;

6. Failing to create and maintain books, records, and accounts which, in reasonable detail, accurately, fairly, and completely reflect the incomes, assets, disbursements, transactions and use of monies by the Defendants or any other entity directly or indirectly under the control of the Defendants;

7. Doing any act or refraining from any act whatsoever to interfere with the Receiver's taking custody, control, possession, or managing of the Assets or Documents subject to this Receivership; or to harass or to interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court; and

8. Filing, or causing to be filed, any petition on behalf of the Receivership Defendants for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, or of any similar

insolvency proceeding on behalf of the Receivership Defendants, without prior approval of the Receiver and the Court.

## XVIII.    DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that, to the extent not already done so pursuant to the TRO, immediately upon service of this Order upon them or upon their otherwise obtaining actual knowledge of this Order (or within a period permitted by the Receiver), Defendants, and any other Person or entity, including but not limited to Financial Institutions and Electronic Data Hosts, shall transfer or deliver access to possession, custody, and control of the following to the Receiver:

A. All Assets held by or for the benefit of the Receivership Defendants;

B. All Documents of the Receivership Defendants, including but not limited to books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, records of ACH transactions, and check registers), client or customer lists, title Documents and other papers;

C. All Assets belonging to members of the public now held by the Receivership Defendants;

D. All keys, computer and other passwords, user names, entry codes, combinations to locks required to open or gain or secure access to any Assets or Documents of or pertaining to the Receivership Defendants, wherever located, including, but not limited to, access to their business premises, means of communication, accounts, computer systems (onsite and remote), Electronic Data Hosts, or other property;

E. All Assets and Documents belonging to other Persons or entities whose interests are under the direction, possession, custody, or control of the Receivership Entities; and

31

F. Information identifying the accounts, employees, properties, or other Assets or obligations of the Receivership Defendants.

G. This Section does not apply to the Chapter 7 Trustee or property of the Bankruptcy Estate.

**IT IS FURTHER ORDERED** that, in the event any Person or entity fails to deliver or transfer immediately any Asset or otherwise fails to comply with any provision of this Section, the Receiver may file *ex parte* with the court an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal, any Deputy United States Marshal, the Federal Bureau of Investigation, the Internal Revenue Service, or any sheriff or deputy sheriff of any county to seize the Asset, Document, or other thing and to deliver it to the Receiver.

## XIX. NON-INTERFERENCE WITH RECEIVER

**IT IS FURTHER ORDERED** that the Receivership Defendants, their officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are hereby preliminarily restrained and enjoined from directly or indirectly:

A. Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to the receivership;

B. Transacting any of the business of the Receivership Entities;

C. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which the interest is held or claimed by, the Receivership Entities; or

D. Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XX. COMPENSATION FOR RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by or in the possession or control of, or which may be received by, the Receivership Defendants. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XXI. RECEIVER'S REPORTS

**IT IS FURTHER ORDERED** that to the extent not already done, the Receiver shall report to this Court: (1) the steps taken by the Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated assets of the Receivership Defendants; (3) the sum of all liabilities of the Receivership Defendants; (4) the steps the Receiver intends to take in the future to (a) prevent any diminution in the value of assets of the Receivership Defendants, (b) pursue receivership assets from third parties, and (c) adjust the liabilities of the Receivership Defendants, if appropriate; (5) the Receiver's assessment of whether the business can be operated in compliance with this Order; and (6) any other matters that the Receiver believes should be brought to the Court's attention. Provided, however, that if any of the required information would hinder the Receiver's ability to pursue receivership assets, the portions of the Receiver's

33

report containing such information may be filed under seal and not served on the parties.

## XXII. TURNOVER OF PROPERTY OF THE BANKRUPTCY ESTATE

**IT IS FURTHER ORDERED** that to the extent that Plaintiff or the Receiver come into possession of property of the Bankruptcy Estate, such property shall be turned over to the Chapter 7 Trustee as soon as it is reasonably possible to do so.

## XXIII. WITHDRAWAL OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver and any professional retained by the Receiver, including but not limited to his or her attorneys and accountants, be and are hereby authorized to reasonably withdraw from his or her respective appointments or representations and apply for payment of their professional fees and costs at any time after the date of this Order by sending written notice seven days prior to the date of the intended withdrawal to the Court and to the parties along with a written report reflecting the Receiver's work, findings, and recommendations, as well as an accounting for all funds and Assets in possession or control of the Receiver. The Receiver shall be exonerated and the receivership deemed closed seven days from the date of the mailing of such notice of withdrawal. The Court will retain jurisdiction to consider the fee applications, report, and accounting submitted by the Receiver and the professionals. The written notice shall include an interim report indicating the Receiver's actions and reflect the knowledge gained along with the fee applications of the Receiver and his or her professionals. The report shall also contain the Receiver's recommendations, if any.

## XXIV. RECEIVER'S BOND/LIABILITY

**IT IS FURTHER ORDERED** that no bond shall be required in connection with the appointment of the Receiver. Except for an act of gross negligence, the Receiver and the professionals shall not be liable for any loss or damage suffered by any of the Defendants, their officers, agents, servants, employees, and attorneys

34

or any other person, by reason of any act performed or omitted to be performed by the Receiver and the professionals in connection with the discharge of his or her duties and responsibilities, including but not limited to their withdrawal from the case under Section XXIII.

## XXV. PROHIBITION ON RELEASE OF CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that, except as required by a law enforcement agency, law, regulation, or court order, Defendants, and their successors, assigns, officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, are preliminarily restrained and enjoined from disclosing, using, or benefitting from Consumer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a Consumer's account (including a credit card, bank account, or other financial account), of any person, which any Defendant obtained prior to entry of this Order in connection with any Debt-Relief Product or Service.

## XXVI. STAY OF ACTIONS

**IT IS FURTHER ORDERED** that:

A. Except by leave of this Court, during pendency of the Receivership ordered herein, Defendants are hereby stayed from taking any action for, against, on behalf of, or in the name of any of the following: the Receivership Defendants, any of their subsidiaries, affiliates, partnerships, Assets, Documents, or the Receiver or the Receiver's duly

35

authorized agents acting in their capacities as such. Such hereby-stayed actions include, but are not limited to, the following:

1. Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2. Attempting to foreclose, forfeit, alter, or terminate any interest in any Asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3. Executing, issuing, serving, or causing the execution, issuance, or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

4. Doing any act or thing whatsoever to interfere with the Receiver taking custody, control, possession, or management of the Assets or Documents subject to the Receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendants; and

B. Except by leave of this Court, during pendency of the Receivership ordered herein, all creditors, lessors, customers, employees, and other persons seeking to establish or enforce any claim, right, or interest against Receivership Defendants, and all others acting for or on behalf of such persons, are enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Defendants, including:

1. Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Defendants,

36

including the issuance of employment of process against the Receivership Defendants, except that such actions may be commenced if necessary to toll any applicable statute of limitations; or

2. Filing or enforcing any lien on any asset of the Receivership Defendants, taking or attempting to take possession, custody, or control of any Asset of the Receivership Defendants; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Defendants, whether such acts are part of a judicial proceedings, or acts of self-help, or otherwise.

C. This Section does not stay:

1. The commencement or continuation of a criminal action or proceeding;

2. The commencement or continuation of an action or proceeding by a state bar association to enforce its police or regulatory power;

3. The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

4. The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

5. The Bankruptcy Proceeding or any action of the Chapter 7 Trustee with respect to property of the Bankruptcy Estate; or

6. The issuance to a Receivership Defendant of a notice of tax deficiency; and

D. Except as otherwise provided in this Order, all Persons and entities in need of Documentation from the Receiver shall in all instances first attempt to secure such information by submitting a formal written request

37

to the Receiver, and, if such request has not been responded to within thirty days of receipt by the Receiver, any such Person or entity may thereafter seek an Order of this Court with regard to the relief requested.

### XXVII.    RESOLUTION OF BANKRUPTCY PROCEEDING

**IT IS FURTHER ORDERED** that, should the Bankruptcy Proceeding be dismissed during the pendency of this action, CAC will become a Receivership Defendant and the property of the Bankruptcy Estate shall revert to the exclusive control of the Receiver and will be deemed Assets subject to the provisions of this Order.

### XXVIII.    LIMITED EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to conduct certain expedited discovery, and that, commencing with the time and date of this Order until a Rule 16(b) scheduling order is issued, in lieu of the time periods, notice provisions, and other requirements of Rules 19, 26, 30, 34, and 45 of the Federal Rules of Civil Procedure, and applicable Local Rules, Plaintiffs and the Receiver are granted leave to:

A. Take the deposition, on three days' notice, of any Person or entity, whether or not a party, for the purpose of discovering: (1) the nature, location, status, and extent of Assets of Defendants or their affiliates or subsidiaries; (2) the nature, location, and identity of participants in Defendants' business transactions and operations; 3) the nature and location of Documents and business records of Defendants or their affiliates or subsidiaries: and (4) compliance with this Order. The limitations and conditions set forth in Rules 30(a)(2) and 31(a)(2) of the Federal Rules of Civil Procedure regarding subsequent depositions shall not apply to depositions taken pursuant to this Section. In addition, any such depositions taken pursuant to this Section shall not be counted toward the ten deposition limit set forth in Rules 30(a)(2)(A)(i) and

31(a)(2)(A)(i) of the Federal Rules of Civil Procedure and shall not preclude Plaintiffs from subsequently deposing the same Person or entity in accordance with the Federal Rules of Civil Procedure. Service of discovery upon a party, taken pursuant to this Section, shall be sufficient if made by facsimile, email or by overnight delivery.

B. Serve upon parties requests for production or inspection of Documents, or interrogatories that require production, inspection, or interrogatory responses within three calendar days of service, and may serve subpoenas upon non-parties that direct production, inspection, or responses to interrogatories within five calendar days of service, for the purpose of discovering: 1) the nature, location, status, and extent of Assets of Defendants or their affiliates or subsidiaries; (2) the nature, location, identify of participants, and extent of Defendants' transactions; (3) the nature and location of Documents and business records of Defendants or their affiliates or subsidiaries; and (4) enforcing compliance with this Order, *provided that* twenty-four hours' notice shall be deemed sufficient for the production of any such Documents that are maintained or stored only as electronic data;

C. Serve deposition notices and other discovery requests upon the parties to this action by facsimile or overnight courier, and take depositions by telephone or other remote electronic means;

D. If a Defendant fails to appear for a properly noticed deposition or fails to comply with a request for production or inspection, seek to prohibit that Defendant from introducing evidence at any subsequent hearing;

E. Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court. The expedited

39

discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Fed. R. Civ. P. 26(d) & (f); and

F.  The Parties are exempted from making initial disclosures under Fed. R. Civ. P. 26(a)(1) until further order of this Court. This Section does not apply to the Chapter 7 Trustee.

## XXIX.     DEFENDANTS' DUTY TO DISTRIBUTE ORDER

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, client company, Electronic Data Host, agent, authorized signatory to bank accounts, attorney, spouse, and representative of Defendants and shall, within three calendar days from the date of entry of this Order, provide Plaintiffs' counsel with a sworn statement that: (a) confirms that Defendants have provided copies of the Order as required by this Section and (b) lists the names and addresses of each entity or Person to whom Defendants provided a copy of the Order. Furthermore, Defendants shall not take any action that would encourage officers, agents, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns, or other Persons or entities in active concert or participation with Defendants to disregard this Order or believe that they are not bound by its provisions.  This Section does not apply to the Chapter 7 Trustee.

## XXX. DURATION OF ORDER

**IT IS FURTHER ORDERED** that this Order shall expire upon entry of a final judgment in this case.

## XXXI.     CORRESPONDENCE WITH PLAINTIFFS

**IT IS FURTHER ORDERED** that, for the purposes of this Order, because mail addressed to the Bureau is subject to delay due to heightened security

40

screening, all correspondence and service of pleadings on Plaintiff Bureau of Consumer Financial Protection shall be sent either via electronic submission through the court's electronic filing system or via commercial overnight express delivery to:

Bureau of Consumer Financial Protection

Office of Enforcement

1700 G Street, NW

Washington, DC 20552

ATTN: Sarah Preis

Email: Sarah.Preis@cfpb.gov; Jesse.Stewart@cfpb.gov

**IT IS FURTHER ORDERED** that, for the purposes of this Order, all correspondence and service of pleadings on Plaintiffs State of Minnesota, State of North Carolina, and People of the State of California shall be sent either via electronic submission through the Court's electronic filing system or email or addressed to:

Evan S. Romanoff

Assistant Attorney General

Minnesota Attorney General's Office

445 Minnesota Street, Suite 1200

St. Paul, Minnesota 55101-2130

Email: Evan.Romanoff@ag.state.mn.us


M. Lynne Weaver

Special Deputy Attorney General

North Carolina Department of Justice

114 W. Edenton Street

Raleigh, NC 27603

Email: lweaver@ncdoj.gov

41

Christina V. Tusan

Supervising Deputy City Attorney

Office of the City Attorney

200 N. Main Street, 500 City Hall East

Los Angeles, CA 90012-4131

Email: christina.tusan@lacity.org

## XXXII.     SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by facsimile transmission, email, personal or overnight delivery, or US Mail, by Plaintiffs' agents and employees or any local, state, or federal law enforcement agency or by private process server, upon any Financial Institution or other entity or Person that may have possession, custody, or control of any Documents or Assets of any Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch, subsidiary, affiliate, or office shall effect service upon the entire entity.

## XXXIII.    RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes of construction, modification, and enforcement of this Order.

**SO ORDERED**, this 15th  day of November, 2019, at 12:59 p.m.

The Honorable James V. Selna
United States District Judge

43