**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

IN RE:                                              **Case No. 19-10655-BKC-JKO**

CONSUMER ADVOCACY CENTER INC.,          **Chapter 7**

　　　Debtor.

**BUREAU OF CONSUMER FINANCIAL PROTECTION, STATE OF MINNESOTA,**
**STATE OF NORTH CAROLINA, AND THE PEOPLE OF THE STATE OF**
**CALIFORNIA'S MOTION TO DISMISS CHAPTER 7 CASE**

The Debtor in this case appears to have sought bankruptcy protection in a misguided effort to avail itself of the automatic stay provision of the bankruptcy code and has admitted it listed numerous government creditors on its bankruptcy filing to "prevent investigations."[1] The law enforcement agencies pursuing those investigations have claims amounting to 99% of the value of the claims filed in this proceeding, and those agencies have now filed suit against the Debtor and several non-debtors in the United States District Court for the Central District of California, obtaining a preliminary injunction, asset freeze, and the appointment of a receiver to oversee select defendants. That case is pending in the district where Debtor, its principals, and all related parties are located, in contrast to the Southern District of Florida where venue appears to be improper. The interests of the creditors would be better served by dismissal of this proceeding. Continuation of this proceeding will be harmful to creditors because it will involve the continued accrual of fees by the Ch. 7 Trustee and her professionals and potentially increases the costs of administration of both the bankruptcy estate and the receivership estate, which will unnecessarily deplete the funds available for payments to creditors and distributions to harmed

---

[1] 5/13/19 341 Transcript CAC, ECF No. 54-5 at 46:14-47:6.

1

consumers. Accordingly, pursuant to 11 U.S.C. §§ 305 and 707(a) and 28 U.S.C. § 1406, creditors the Bureau of Consumer Financial Protection (Bureau), the State of Minnesota, the State of North Carolina, and interested party the People of the State of California (collectively, the States) move the Court to dismiss this case.

## BACKGROUND

Debtor Consumer Advocacy Center (CAC) is a California corporation formed in August 2014 that has held itself out as doing business in Irvine, California.[2] CAC has offered, sold, and performed student-loan debt-relief services to consumers d/b/a Premier Student Loan Center. Its principal owner is Albert Kim, and it has also been co-owned and managed by Kaine Wen.[3]

On September 10, 2018, the Bureau issued a civil investigative demand (CID) to CAC.[4] The CID sought information relating to CAC's telemarketing and sales practices, including its practice of charging consumers fees before any debt relief services were rendered and the nature of representations it made to consumers about its services and fees.[5] CAC initially evaded service of the CID, and subsequently ignored efforts by Bureau counsel to obtain information and documents responsive to the CID.[6] Following receipt of the Bureau's CID, on September 21, 2018, CAC transferred its sales operations to a new corporate form, Prime Consulting LLC, which in turn utilized numerous d/b/as, including Financial Preparation Services.[7]

---

[2] Ex. 6, Decl. of Dani Schneider (Schneider Decl.) at ¶¶4-7; Ex. 7, Cal. Sec. of State Records for CAC.
[3] See 3/5/2019 341 Transcript CAC, ECF No. 54-3 at 4:20-24; Ex. 6, Schneider Decl. at ¶¶ 23-24; Ex. 20, Maverick Bankcard, Inc. CID Response; Exs. 21 and 22, Francis David Corporation dba Electronic Merchant Systems CID Response.
[4] Ex. 6, Schneider Decl. at ¶17.
[5] See id.
[6] Id. at ¶¶18-22.
[7] See id. at ¶¶4, 9, 31; Reply in Support of Precautionary Joint Mot. For Enlargement of Time to Comply with Turnover, ECF No. 131 at ¶5.

Shortly thereafter, on October 1, 2018, Albert Kim on behalf of CAC signed a "virtual office services agreement", which is essentially an agreement for mailbox and administrative services (such as call answering services) that provided CAC with an address in Fort Lauderdale, Florida.[8] Although Kim testified that the lease was for "an office suite" and that he assumed there was office equipment and furniture there, he also acknowledged that he had never actually been to the office and that CAC was only registered to do business in California.[9] Kim further testified that CAC no longer had an office in California, yet CAC's records continued to be housed in California at offices occupied by related companies, True Count and Prime, and Kim personally occupied a corner office in Prime's office.[10]

In January 2019, CAC filed this action under Chapter 11 of the Bankruptcy Code, listing numerous law enforcement agencies as creditors, including the Bureau, Minnesota, and North Carolina. Debtor apparently believed it could "prevent" law enforcement investigations by filing for bankruptcy.[11] During this proceeding, the Debtor testified that it had been barely profitable, did not have accounts receivable, and had ceased operations.[12] In fact, the Debtor had transferred money to insiders in the months leading up to the bankruptcy and transferred operations to other entities who continued to charge consumers who had enrolled through CAC's services, and continued operating the illegal business model.[13]

---

[8] *See* Ex. 6, Schneider Decl. at ¶16.
[9] 5/13/19 341 Transcript CAC, ECF No. 54-5 at 84:2-15.
[10] 5/13/19 341 Transcript CAC, ECF No. 54-5 at 82:2-15; Ex. 6, Schneider Decl. at ¶¶30-31.
[11] *See* 5/13/19 341 Transcript CAC, ECF No. 54-5 at 46:14-47:6.
[12] 3/5/19 341 Transcript CAC, ECF No. 54-3 at 26:10-27:1, 46:14-17; Reply in Support of Precautionary Joint Mot. For Enlargement of Time to Comply with Turnover, ECF 131 at ¶3.
[13] *See* Ex. 5, Decl. of Matthew Heidari (Heidari Decl.) ¶¶3-6; Sept. 17, 2019 Hr'g Tr. at 5:12-6:12; Ex. 1, Complaint, *CFPB v. CAC,* No. 8:19-cv-01998-JVS (JDEx), (C.D. Cal. Oct. 21, 2019), ECF No. 2 (Compl.), at ¶¶51-108; Ex. 4, Stipulated Prelim. Injunct. with Asset Freeze, Appointment of Receiver, and Other Equitable Relief, *CFPB v. CAC,* No. 8:19-cv-01998-JVS (JDEx), (C.D. Cal. Oct. 21, 2019), ECF No. 103. (PI Order) at ¶2.

On June 14, 2019, the U.S. Trustee filed a motion to appoint a Chapter 11 trustee or examiner. In support of that motion, the U.S. Trustee raised numerous concerns warranting the appointment of trustee, including substantial transfers to potential insiders and CAC's failure to be forthcoming about government inquiries.[14] The court granted that motion and directed the Trustee to appoint a Chapter 11 Trustee.[15] On August 12, 2019, the Chapter 11 Trustee moved to convert the case to Chapter 7.[16] The Court granted the motion on August 20, 2019.[17]

On July 26, 2019, the Bureau issued a Notice of Examination Duces Tecum to the Debtor, requiring it to produce documents on or before August 12, 2019 at 5:00 p.m.[18] To date, neither the Debtor nor the Chapter 7 (formerly Chapter 11) Trustee have produced any documents in response to this request, despite follow-up requests to do so.

On October 21, 2019, the Bureau, along with the States of Minnesota and North Carolina, and the People of the State of California (collectively, Plaintiffs), filed an action in the Central District of California against the Debtor and several non-debtor companies and individuals (collectively, Defendants) alleging that the collection of advance fees and various misrepresentations to consumers about their services and fees violated the Consumer Financial Protection Act (CFPA), the Telemarketing Sales Rule (TSR), and the laws of California, North Carolina, and Minnesota.[19] Plaintiffs further allege the individual Defendants in that action control a common enterprise of companies, including the Debtor. The Plaintiffs simultaneously

---

[14] *See* U.S. Trustee's Mot. for the Appointment of a Chapter 11 Trustee, or Alternatively, for the Appointment of a Chapter 11 Examiner, ECF No. 54 at 3, 21-23.
[15] Order Directing the Appointment of a Chapter 11 Trustee and Setting a Status Conference, ECF No. 69.
[16] Expedited Mot. to Convert Ch. 11 Case to Ch. 7, ECF No. 82.
[17] Order Mooting Mot. to Dismiss and Granting Mot. to Convert Case to Chapter 7, ECF No. 86.
[18] 2004 Notice Duces Tecum, ECF No. 67.
[19] *See* Ex. 1, Compl.

4

sought a temporary restraining order, asset freeze, appointment of a receiver, and an order to show cause as to why a preliminary injunction should not issue.[20]

On October 21, 2019, the district court granted Plaintiffs' *ex parte* application for a temporary restraining order.[21] The temporary restraining order enjoined the defendants from continuing the violations of law alleged in the Complaint, appointed a receiver to assume control of the non-debtor companies, froze the assets of all Defendants except for CAC, and granted Plaintiffs and the receiver immediate access to Defendants' business premises.[22] Shortly thereafter, the Receiver determined that the receivership defendants cannot continue operating their student loan debt relief business in a manner that is both profitable and legal.[23]

On November 15, 2019, the district court entered a Stipulated Preliminary Injunction with Asset Freeze, Appointment of Receiver, and Other Equitable Relief (PI Order).[24] The PI Order extends the injunctive provisions of the TRO, the appointment of the receiver, and the asset freeze.[25] The PI Order further provides that if the instant proceeding is dismissed during the pendency of the district court action, CAC will come under the control of the receiver and the property of the bankruptcy estate shall revert to the exclusive control of the receiver and will be deemed assets subject to the provisions of the PI.[26]

---

[20] Ex. 2, Ex Parte Appl. for Temp. Restraining Order with Asset Freeze and other Equitable Relief and Order to show cause why Prelim. Injunct. Should Not Issue, *CFPB v. CAC*, No. 8:19-cv-01998-JVS (JDEx) (C.D. Cal. Oct. 21, 2019), ECF No. 3 (TRO Memo); Notice of Filing Regarding Proceedings Against Related Entities and Individuals in the United States District Court for the Central District of California, ECF No. 148.
[21] Notice of Filing Regarding Proceedings Against Related Entities and Individuals in the United States District Court for the Central District of California, ECF No. 148, Attach. A.
[22] *Id*.
[23] *See* Ex. 3, Prelim. Report of Temp. Receiver, *CFPB v. CAC*, No. 8:19-cv-01998-JVS (JDEx), (C.D. Cal. Oct. 21, 2019), ECF No. 75 at 36:1-20.
[24] All Defendants except CAC stipulated to entry of the PI Order. CAC, through the Chapter 7 trustee, ultimately notified the court that it did not object to entry of the order. *See* Ex. 4, PI Order at ¶3:6-9.
[25] *See id.* at 10:10-40:24.
[26] *Id.* at Section XXVII, 38:4-9.

The Bureau and the States contacted the Chapter 7 Trustee in an effort to resolve the concerns animating the instant motion, but that exchange did not resolve those concerns.

## ARGUMENT

At least three statutory bases exist for dismissing Debtor's bankruptcy case: (1) dismissal would be in the best interests of creditors and debtor pursuant to 11 U.S.C. § 305(a)(1); (2) cause for dismissal exists pursuant to 11 U.S.C. § 707(a); and (3) venue in in the Southern District of Florida is improper, meriting dismissal pursuant to 28 U.S.C. § 1406(a).

### I.      Dismissal is in the best interests of creditors and the debtor.

Section 305 of the Bankruptcy Code provides for dismissal or suspension of a case "at any time if . . . the interests of creditors and the debtor would be better served by such dismissal or suspension[.]" 11 U.S.C. § 305(a)(1). Courts consider several factors in evaluating a motion to dismiss under 11 U.S.C. § 305, including whether another forum is available or there is already pending action in another court. *See In re Forever Propane Sales & Serv., Inc.*, 597 B.R. 696, 697 (Bankr. S.D. Fla. 2019) (Olson, J.). "Whether the 'bankruptcy action is essentially a two-party dispute' is also considered, especially where the creditor can obtain non-bankruptcy relief." *In re Forever* at 697-98. Another factor to consider in evaluating whether dismissal is in the best interests of creditors and the debtor is the economy of bankruptcy administration. *See In re R.V. Seating, Inc.* 8 B.R. 663, 665 (Bankr. S.D. Fla. 1981). Many courts recognize economy and efficiency of administration is the paramount question under 305(a)(1). *See, e.g., In re Iowa Tr.* 135 B.R. 615, 623-24 (Bankr. N.D. Iowa 1992). No one factor is dispositive of the Court's analysis, and which factors to consider is within the Court's discretion. *See id.* at 618.

Here, the instant bankruptcy proceeding is essentially a two-party dispute between the Debtor and the consumer-law-enforcement creditors arising out of conduct that is alleged to

violate numerous state and federal consumer protection laws. The amount of the claims arising from those violations of law far outsizes any other claims. During the Chapter 11 claims process, only six proofs of claim were filed. Three were filed by the consumer-law-enforcement creditors – the Bureau, Minnesota, and North Carolina. Two of those claims were taxing authorities, whose claims total approximately $3,800. One individual filed a claim totaling approximately $10,000. Since conversion to a Chapter 7, a sublessor for CAC filed a proof of claim in the amount of approximately $282,000 and two individuals filed proofs of claim in the amounts of $18,000 and $19,000, respectively. In contrast, the claims of the Bureau and States (which are overlapping) were approximately $31 million (Bureau) plus undetermined penalties, $31.3 million (Minnesota), and $2.9 million (North Carolina). The consumer-law-enforcement claims comprise approximately 99% of the monetary value of the claims.

Continuation of the instant bankruptcy proceeding is detrimental to the interests of the creditors who hold 99% of the value of the claims, and the Debtor, and would only further deplete the Debtor's estate, to the ultimate detriment of creditors. The consumer-law-enforcement creditors in this case are currently litigating the merits of their claims against CAC and numerous non-debtors in the district court action. The evidence gathered to date indicates that tens of thousands of consumers were harmed through the practices of the Defendants in the district court action, including CAC. These consumers were not listed as creditors in the instant proceeding and were therefore not notified of the deadline for submitting proofs of claim.

The district court has determined that the Bureau and the States are likely to succeed on the merits of their claims against CAC and the other Defendants.[27] The pending action also permits for the orderly marshalling of assets of all the Defendants, including the Debtor.

---

[27] *See* Ex. 4, PI Order at ¶2.

Specifically, the PI Order provides that CAC will come under the receiver's control upon dismissal of this action.[28] The receiver's broad authority ensures that CAC's assets will be adequately protected upon dismissal. For example, the receiver is empowered to take exclusive custody, possession, or control of the receivership defendants' assets "wherever situated"; perform "all acts necessary or advisable" to preserve the receivership defendants' assets; "[p]revent the inequitable distribution of assets, and determine, adjust and protect the interests of Consumers and creditors" who have transacted business with the receivership defendants; and can also deem non-parties receivership entities.[29] Given there is a receiver in place, the bankruptcy proceeding is now duplicative.

It is not in the best interest of creditors to continue expending resources participating in this proceeding under these circumstances. The fact that the district court action will fully address the consumer-law-enforcement creditor's claims against CAC weighs in favor of dismissal. *See In re Forever,* 597 B. R. at 699; *cf. In re C&C Dev. Grp., LLC,* No. 11-32362-BKC-AJC, 2012 WL 1865422, at *3 (Bankr. S.D. Fla. May 22, 2012).

If the bankruptcy case remains pending, both the Chapter 7 trustee and the receiver will be pursuing potential assets of the various Defendants and the Debtor. Given the interrelated nature of the Debtor and the other Defendants, that process would likely lead to duplicative efforts and numerous questions and potential disputes regarding whether property recovered is property of the bankruptcy estate or the receivership estate. Further, it would be inefficient for the Chapter 7 trustee to attempt to manage this process where all the relevant parties and records are in a distant forum, which will cause even more significant costs to the estate, costs that could

---

[28] Ex. 4, PI Order at XXVII, 38:4-9.
[29] Ex. 4, PI Order at XV.B, D, H, T 22:23-25, 24:6-11, 24:22-24, 26:5-27:4.

otherwise be applied toward compensating consumers harmed by Defendants' illegal practices. *See In re Michael S. Starbuck*, 14 B.R. 134, 135 (Bankr. S.D.N.Y. 1981) (dismissing bankruptcy proceeding where SEC complaint resulted in appointment of a receiver and holding continuation of bankruptcy proceeding would waste time and resources). The Chapter 7 trustee will also incur costs, borne by the estate, to participate in the district court action, including travel expenses and the retention of local counsel. The interests of judicial economy are not served through continuing this proceeding given the ongoing district court action, and the fact that the receiver will be empowered to marshal CAC's assets upon dismissal of this proceeding.

Finally, the interests of the non-law enforcement creditors do not justify maintaining this proceeding. Counsel to Guaranteed Rate, Inc., the sublessor creditor, does not oppose dismissal of this proceeding. Upon dismissal of the instant proceeding, the receiver will be empowered to settle any outstanding tax claims pursuant to his duties to manage CAC's estate. Because plaintiffs in the district court action seek restitution, consumers who have claims against CAC arising from the conduct alleged in the Complaint might ultimately be compensated through that action.

Because this is essentially a two-party dispute and its continuation would unnecessarily waste the resources of the estate to the detriment of the creditors and the debtor, dismissal under 11 U.S.C. 305(a)(1) is warranted.

## II.    Debtor's bad faith constitutes cause for dismissal.

Section 707(a) of the Bankruptcy Code provides for dismissal of a case "for cause[.]" Cause includes a debtor's bad faith, including bad faith preceding the filing of the bankruptcy petition. *In re Piazza v. Nueterra Healthcare Physical Therapy, LLC*, 719 F.3d 1253, 1261 (11th

9

Cir. 2013). The Eleventh Circuit has noted that "bad faith" does not lend itself to a strict formula and must be determined based on a totality-of-the-circumstances. *Id.* at 1271.

The Debtor's conduct leading up to and during this proceeding warrants dismissal. For years the Debtor has engaged in illegal student-loan debt-relief operation. The district court has already found the Bureau and the States are likely to prevail on the merits of their claims against the Defendants, including the Debtor.[30] Those claims include violations of numerous federal and state laws.[31] Defendants collectively lured consumers into paying more than $71 million in illegal fees and misrepresented the nature and efficacy of the services it purported to offer.[32] The Defendants also made misrepresentations to the Department of Education by submitting false information about borrowers to student-loan servicers, without the knowledge of those borrowers.[33]

Facing increased scrutiny from law enforcement, the Debtor transferred its operations and assets to non-debtors.[34] It set up "virtual office," which was essentially a mailbox that the Debtor never actually visited, in the Southern District of Florida shortly before filing this case in this district, despite the fact the company, its principals, and the related companies are all located in California.[35]

Since filing for bankruptcy, the Debtor has abused the bankruptcy process, including by concealing assets and information from this Court. For example, CAC waited until after the Chapter 7 Trustee identified reserve funds held by a payment processor to disclose $644,972.32

---

[30] *See* Ex. 4, PI Order at ¶2.
[31] *See id.; see also* Ex. 1, Compl. at 22:17-45:14.
[32] *See* Ex. 1, Compl.at 112:20-15:25.
[33] *See* Ex. 1, Compl. at 12:18-28, 14:1-15:1.
[34] *See* Ex. 1, Compl. at 9:27-10:19.
[35] *See* Ex. 6, Schneider Decl. at ¶¶13-16; Ex. 1, Compl. at ¶¶23, 27, 29.

in previously unreported reserve funds.[36] CAC also failed to disclose transfers to insiders. For example, in the year leading up to CAC's bankruptcy petition, CAC transferred $592,600 to Infinite Management, an S-Corporation wholly owned by Albert Kim.[37] CAC also failed to disclose $342,690 in transfers to Hold the Door Corp., an S-Corporation wholly owned by Kaine Wen, who served as managing partner and who controlled CAC's finances in the year leading up to the instant bankruptcy filing.[38]

The Debtor also represented to the Court and the Chapter 7 trustee that it had ceased providing student-loan debt-relief services in September 2018.[39] In fact, its principals continued to operate and engage in illegal practices, including using the name Premier.[40]

The totality of circumstances clearly indicates the Debtor has acted in bad faith, both prior and subsequent to its bankruptcy petition. Accordingly, this Court should dismiss this case pursuant to 11 U.S.C. § 707(a).

### III.    Dismissal is warranted because the Southern District of Florida is not the proper venue.

Dismissal is also an appropriate remedy when a bankruptcy case is filed in an improper venue, particularly where a case is brought in an improper venue in bad faith. In proceedings under title 11, venue is proper in "the district court within which the debtor's domicile, residence, principal place of business, or principal assets have been located for at least the greater portion of the preceding 180 days." 28 U.S.C. § 1408. The principal place of business has been defined as the "nerve center" where "corporation's officers direct, control, and coordinate

---

[36] *See* Turnover Order for Maverick, ECF No. 132; Amd. Schedule A/B, ECF No. 138.
[37] Ex. 5, Heidari Decl. at ¶¶3-5; Ex. 10, Cal. Sec. of State Records for Infinite Management Solutions, Inc.
[38] *See* Ex. 5, Heidari Decl. at ¶¶3-5; Ex. 11, Cal. Sec. of State Records for Hold the Door, Corp.
[39] *See* 3/5/19 341 Transcript CAC, ECF No. 54-3 at 6:5-14; Reply in Support of Precautionary Joint Mot. For Enlargement of Time to Comply with Turnover, ECF No. 131.
[40] *See* Ex. 6, Schneider Decl. at ¶¶10-12, 26-28.

the corporation's activities." *See In re Matter of Asanda Air, LLC*, 600 B.R. 714, (Bankr. N.D. Ga. Apr. 24, 2019) (citing *Hertz v. Friend,* 559 U.S. 77, 92-93 (2010).

A bankruptcy court must dismiss or transfer a case filed in an improper venue. 28 U.S.C. § 1406; *Matter of Asanda Air II LLC*, 600 B.R. 714, 723-24 (N.D. Ga. 2019). "When a case is brought in an improper venue in bad faith, it should be dismissed." *Id.* at 723-24 (citing *Palmer v. Dau*, 2010 WL 2740075 at *2 (M.D. Fla. July 12, 2010)).

 Here, the Debtor is a California corporation, whose principal place of business and assets have never been located in the state of Florida, let alone this district. The Debtor's sole connection to this district for venue purposes appears to be the "virtual office" it leased shortly before filing its petition, which it listed in its petition as the address for its principal place of business and which Albert Kim acknowledged he had never actually visited.[41] That "office" does not constitute a principal place of business, much less a domicile, residence, or location of principal assets. The Southern District of Florida is not the proper venue for this case under 28 U.S.C. § 1408.

The Debtor's attempts to establish a presence and then file for bankruptcy in this district were wholly inadequate. Given Debtor's efforts to use bankruptcy to evade law enforcement, including listing government creditors "to prevent investigations," the Debtor's choice of venue is suspect at best. Given indications of bad faith in choosing this venue, the bankruptcy case should be dismissed. *See Asanda Air*, 600 B.R. at 723 (citing *Palmer*, 2010 WL 2740075 at *2).

## CONCLUSION

For the foregoing reasons, the Court should grant the Bureau's motion to dismiss pursuant to 11 U.S.C. §§ 305 and 707(a), and 28 U.S.C. § 1406.

---

[41] *See* ECF No. 1; 3/5/19 Transcript CAC, ECF No. 54-3 at 33:9-34:18.

Dated: December 20, 2019              Respectfully submitted,

Cara Petersen
Acting Enforcement Director

Deborah Morris
Deputy Enforcement Director

Alusheyi J. Wheeler
Assistant Deputy Enforcement Director


By: */s/ Sarah Preis*
Sarah Preis (D.C. Bar No. 997387)
Email: sarah.preis@cfpb.gov
Tel.: 202-435-9318
Jesse Stewart (N.Y. Bar No. 5145495)
Email: jesse.stewart@cfpb.gov
Tel.: 202-435-9641
1700 G Street, NW
Washington, DC 20552
Enforcement Attorneys

*Attorneys for Creditor Bureau of Consumer
Financial Protection*

By: */s/ M. Lynne Weaver*
M. Lynne Weaver (N.C. Bar No. 19397)
Special Deputy Attorney General
North Carolina Department of Justice
114 W. Edenton St.
Raleigh, NC 27603
Phone: (919) 716-6039
Email: lweaver@ncdoj.gov

Attorney for Creditor
State of North Carolina

By: */s/ Evan Romanoff*
Evan Romanoff
Atty. Reg. No. 0398223
Assistant Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Phone: (651) 757-1454
Email: evan.romanoff@ag.state.mn.us

13

Attorney for Creditor
State of Minnesota

By: /s/ *Christina Tusan*
Christina Tusan,
Supervising Deputy City Attorney
Office of the City Attorney
Consumer and Workplace Protection Unit
200 N. Main Street, 500 City Hall East
Los Angeles, CA 90012
Phone: 213-473-6908
Email: christina.tusan@lacity.org

Attorney for Interested Party
People of the State of California

14